44 A.3d 1033

William S. DIZE

v.

**ASSOCIATION OF MARYLAND PILOTS.**

**No. 26, Sept. Term, 2010.**

Court of Special Appeals of Maryland.

May 31, 2012.

Michael H. Bereston, Annapolis, MD, and Robert E. Joyce, Baltimore, MD, all on the brief, for Appellant.

James W. Bartlett, III and Alexander M. Giles (Richard A. Tabuteau, Semmes, Bowen, & Semmes, on the brief) Baltimore, MD, for Appellee.

Panel: GRAEFF, HOTTEN and RAYMOND G. THIEME, JR., (Retired, Specially Assigned), JJ.

GRAEFF, J.

William S. Dize, appellant, filed a claim in the Circuit Court for Baltimore City against his employer, the Association of Maryland Pilots (the "Association"), appellee, pursuant to the Jones Act, 46 U.S.C. § 30104 (2006),[1] after he was diagnosed with silicosis of the lungs. In his claim, Mr. Dize attributed his condition to the Association's negligence in failing to provide him with adequate protective equipment to safely perform a sandblasting project that took place in 2007. Both parties filed motions for summary judgment, and the court granted summary judgment in favor of the Association.

On appeal, Mr. Dize presents two questions for our review,[2] which we have consolidated and rephrased as follows:

Did the circuit court err in granting the Association's motion for summary judgment after finding, as a matter of law, that Mr. Dize was not a seaman under the Jones Act?

---

**1.** Appellant cited to the Jones Act as 46 U.S.C.A. § 688 (1920) in his claim. This portion of the United States Code was recodified in 1983 and again in 2006 as 46 U.S.C. § 30104.

**2.** The questions presented as they appear in Mr. Dize's brief are as follows:

1. Whether the Circuit Court for Baltimore City erroneously granted summary judgment on the issue of whether Appellant was entitled to "seaman status" under the Jones Act, by misapplying the elements constituting Appellant's time spent in service of a fleet of vessels in navigation?
2. Alternatively, whether the Circuit Court for Baltimore City erred as a matter of law, by improperly excluding any inquiry into Appellant's "seaman status" from a jury's consideration of additional creditable time in support of a fleet of vessels in navigation?

For the reasons set forth below, we shall affirm the judgment of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 22, 2008, Mr. Dize filed a claim against the Association in the Circuit Court for Baltimore City pursuant to the Jones Act.[3] He alleged that, during the first week of June 2007, while employed by the Association, he was "assigned to sandblast old paint from the bottom of the Annapolis Pilot" while the boat was dry-docked. The Association provided him and the other crew members with safety equipment, including safety suits, masks, and helmets to perform the task, but Mr. Dize was unable to wear the safety equipment because he was claustrophobic. The Association was aware of his condition, but the Association insisted that he participate in the sandblasting project or be terminated. Mr. Dize wore the mask and helmet "as much as possible during the work, which went on for approximately one week."[4]

Mr. Dize was diagnosed with silicosis of the lungs on January 14, 2008. He maintained that the Association negligently caused his injuries by: (1) failing "to provide [a] safe place in which to work"; (2) failing "to properly provide adequate safety equipment and/or facilities to prevent [his] exposure to harmful agents from sandblasting"; (3) failing to

---

**3.** An individual pursuing a claim under the Jones Act may choose to do so in either state or federal court; the opposing party may not deprive the plaintiff of his or her preferred forum by removing the claim to federal court. 28 U.S.C. § 1333(1) (2006) ("The district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."); *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 455, 121 S.Ct. 993, 148 L.Ed.2d 931 (2001) ("the saving to suitors clause preserves remedies and the concurrent jurisdiction of state courts over some admiralty and maritime claims[,]" including claims brought under the Jones Act).

**4.** Mr. Dize noted that, on June 15, 2007, the Maryland Department of the Environment ordered the Association to cease and desist the sandblasting operation because "coal dust was polluting the nearby waterways and spreading black soot all over a nearby private marina."

warn him of the dangerous conditions associated with performing his duties; (4) failing "to conduct proper inspections of the pier and/or appurtenant facilities aforesaid in order to discover and remedy said hazardous condition"; (5) failing "to condemn the Pier as appropriate"; (6) failing "to provide adequate lighting to allow [him] to perform his job in a safe and reasonable manner"; (7) providing him "an unseaworthy vessel"; (8) failing "to provide adequate manpower to allow [him] to perform his job in a safe and reasonable manner"; and (9) engaging in conduct that was otherwise "careless, reckless and negligent." Mr. Dize asserted that, as a result of the Association's negligence, he sustained injuries to his "lungs, neck, mouth, nose, airways and other internal organs." Additionally, he alleged damage to his nervous system, as well as great physical pain and mental anguish. Mr. Dize estimated that his lost earning potential was between $48,000 and $62,000 annually, and he sought $5,000,000 in damages.

On July 16, 2008, the Association filed its answer to Mr. Dize's claim. It asserted that the circuit court lacked subject matter jurisdiction because Mr. Dize was not a seaman for purposes of the Jones Act, but rather, Mr. Dize's injuries were covered by the Longshore and Harbor Workers' Compensation Act or the Maryland Workers' Compensation Act. It further denied any negligence on its part and alleged that any injuries sustained by Mr. Dize were caused by his own contributory negligence, insubordination, a preexisting condition, or the acts of others.[5]

On November 30, 2009, Mr. Dize filed an amended claim, in which, among other things, he alleged that the Association had "failed to adhere to federal and state occupational safety standards" and that it had wilfully failed to pay "maintenance

---

5. On March 31, 2009, the Association filed a Third–Party Complaint against Harsco Corporation ("Harsco"), a Delaware corporation with its principal place of business in Pennsylvania. The Association stated that Reed Minerals, a division of Harsco, manufactured and distributed "Black Beauty," the blasting abrasive used during the sandblasting project, and it asserted that, if Mr. Dize's injuries were sustained as a result of his participation in the sandblasting project, it was a result of Harsco's negligence.

and cure at the rate of fifteen dollars ($15.00) a day as required." He demanded $10,000,000 in compensatory damages, $5,000,000 in punitive damages, and reasonable attorneys' fees.

On December 14, 2009, the Association filed a motion to strike Mr. Dize's amended complaint, arguing that it would be unduly prejudicial to allow Mr. Dize to add a maintenance and cure claim more than a year after litigation had commenced. The court ultimately granted the motion to strike the amended complaint.

On January 15, 2010, the Association filed a Motion for Summary Judgment, alleging that Mr. Dize did not spend 30% of his time working onboard a vessel, as required to qualify as a seaman under the Jones Act. It asserted that there was no dispute of material fact that Mr. Dize did not qualify as a Jones Act seaman, and the Association was entitled to judgment as a matter of law. In support, the Association submitted an affidavit signed by James Merryweather, Mr. Dize's supervisor, which described Mr. Dize's responsibilities as follows:

> Mr. Dize's duties included running the office at [the Association's Pilot Transfer Station ("PTS") ], enforcing Association policies and work rules, dealing with local vendors, managing the shop, dispatching pilots and boat operators, making runs on (operating) the pilot launches, supervising the housekeeping crew, and overseeing routine and special projects that occurred during his one-week watch. Mr. Dize was a salaried employee who worked one week on, one week off. During the week he was on, Mr. Dize was on duty twenty-four hours a day, seven days a week. During his week on, Mr. Dize was the sole manager at the Station and was supervising other employees.

Mr. Merryweather's affidavit detailed the hours that Mr. Dize spent operating pilot launches. It further stated:

> When he was not on the water, Mr. Dize spent no more than half of an hour a day on average ... while ashore in the service of vessels he operated, doing such things as maintenance, repairs, fueling, supplying, and other duties

relating to his work as a launch operator. The rest of his time on duty was spent doing ... other tasks ... that did not relate to his work as a launch operator. According to the records of the Association, Mr. Dize worked 26 weeks, seven days a week, in 2006 and 2007. Accordingly, Mr. Dize worked no more than a total of 91 hours each of those years while ashore in the service of the vessels he operated.

On February 2, 2010, Mr. Dize filed his motion opposing the Association's Motion for Summary Judgment. Despite filing his own motion for summary judgment several weeks earlier, he alleged that "[t]here are genuine issues as to material fact to be submitted to the jury as to whether [Mr. Dize] is a Jones Act seaman for the purposes of this act." Mr. Dize stated that he had been a Pilot Launch Operator or crew member for 21 years prior to his injury in 2007, and he "was required to ride, operate and maintain the [Association's] pilot launch (or group of launches)." [6] Mr. Dize provided percentages of his time spent on the water for 1994 through 2007; these percentages varied, but the average was well under 20%.[7]

Mr. Dize described his maintenance duties as Assistant Station Manager as including "general maintenance of the buildings on the station property itself as well as painting boats, sanding them, filling them in, painting them and changing their props, replacing worn zincs, changing rotors and shafts, changing rub rails and the fueling of all the launches." In the affidavit attached to his motion, Mr. Dize stated that he spent at least three to four hours each day "performing these shoreside support tasks." [8] Mr. Dize asserted that he "did not

---

6. Mr. Dize explains in his brief, consistent with the deposition testimony of Mr. Merryweather, that a Pilot Launch Operator transports pilots to and from large commercial ships. Mr. Dize worked alternating weeks, 24 hours per day, sleeping at the Solomons Island Pilot Transfer Station/Maintenance & Repair Facility at night.

7. The percentages ranged from approximately 3% in 1994 to 22.48% in 2001.

8. In his brief on appeal, Mr. Dize points to deposition testimony where he said that he worked "5 to 6 hours per day" on maintenance to the

have a passive desk job as a shore-side manager." He explained:

> Our longest days, over four (4) or more hours a day, would be spent working on the boats when they were pulled out of the water and drydocked in the spring and the fall for Re–Fit projects. My regular maintenance duties were sanding, puttying, painting and re-gelling the boats. The most time consuming tasks [were] pulling off and installing rub rails on the sides of these boats.... Sometimes we would pull out engines and overhaul them, as well as re-deck the boats and gut and rebuild the cabins.

The affidavit stated that, "in addition to my time on the water and the fleet support activities I participated in as recorded by the maintenance logs for each of the pilot launches," Mr. Dize spent considerable time on the re-fit of various pilot launches: 110 hours in the fall of 2002 through the spring of 2003; 210 hours through January 2004; an additional 148 hours through December 2004; 219 hours from January to August 2005; 200 hours from October of 2005 through the spring of 2006; and 100–150 hours on a repair project in 2005, which involved painting and hull work. Mr. Dize stated that his work was "in support of the fleet of pilot launches in navigation," and he "spent practically 100% of his time in the service of the fleet of pilot launches."

On February 4, 2010, the Association filed its opposition to Mr. Dize's Motion for Summary Judgment. It alleged that there was no dispute that Mr. Dize spent only "a small fraction of his working time on board a vessel," the relevant inquiry for a determination of seaman status. It noted that, although its calculations of Mr. Dize's "times on the water" in 2006 and 2007 did not "exactly match" Mr. Dize's calculations, even using Mr. Dize's calculations, "the average percentage of his working time aboard a vessel in navigation over the last 14

---

boats, which he asserts was 42% to 50% of his time. Mr. Dize's counsel below, however, did not point out this testimony or make that argument to the circuit court. As explained in more detail, *infra*, however, that dispute is not relevant to the ultimate resolution of the case.

years ... was only 12.81 percent." It asserted that there was no dispute that his time working on a vessel did not approach 30%, as required for seaman status under the Jones Act.

On February 24, 2010, the circuit court held a hearing on the motions. Counsel for the Association argued that, in determining whether Mr. Dize qualified as a seaman under the Jones Act, the court should consider only the time Mr. Dize spent on the water. Even if the court considered the time that Mr. Dize spent "off the water in service of the vessel ... he still doesn't get anywhere close to 30[%]." Counsel argued that, even if Mr. Dize spent 16.06% of his time working on the water in 2006 and 2007, and even if the time Mr. Dize spent refitting the vessel were added to that total, he would have worked only 20.64% of his time in service to the vessel.[9] Although counsel agreed that Mr. Dize had contributed to the function of the vessel or the accomplishment of its mission, counsel maintained that there was "no evidence that would allow a reasonable juror to find that the duration test has been met in this case," stating that Mr. Dize was "a shoreside worker."

Counsel for Mr. Dize responded that the 30% rule was merely a "rule of thumb," and it was appropriate to depart from the rule in certain cases. He maintained that departing from the 30% rule would be consistent with the Supreme Court's holding in *Chandris, Inc. v. Latsis*, 515 U.S. 347, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995), which determined that a marine engineer who spent no more than 10% of his time on the vessels was a seaman under the Jones Act because he had a substantial connection to a fleet of vessels in navigation. Counsel argued that Mr. Dize similarly had a substantial

---

9. In its brief, the Association notes that it initially had calculated the amount of time Mr. Dize spent in service to the vessel "on the water to be 18.99% of his work time in 2006 and 19.79 of his work time in 2007." During preparation for trial, "the Association determined that it had counted certain launch trips twice, thereby incorrectly inflating those figures." After adjusting the figures to correct its error, the Association concluded that Mr. Dize had spent 16.06% of his time on the water in both 2006 and 2007.

connection to a fleet of vessels in navigation given his role in facilitating the launches. He concluded:

> [T]he facts in *Chandris* are clear on this, that even if you have a substantial connection duration and we, again, argue ... that practically a hundred percent of his time is in support of a fleet of vessels in navigation ... that he should qualify as a Jones Act seaman and ... clearly, he's way beyond the 30 percent which is a rule of thumb and not a bright line as the Association argues.

On February 25, 2010, the circuit court issued an order granting the Association's motion for summary judgment. The court found that the issue was governed by *Chandris*, and that, to qualify as a seaman under the Jones Act, a claimant must demonstrate: (1) that his or her duties contributed to the function of the vessel or the accomplishment of its mission; and (2) he or she must have had a " 'connection to the vessel in navigation ... that is substantial in terms of both its duration and nature.' "

Regarding the durational requirement, the court noted that the Supreme Court in *Chandris* adopted, as "an appropriate rule of thumb," a requirement that a worker spend at least 30% of his time in the service of a vessel in navigation to qualify as a seaman. The court reviewed the parties' calculations regarding the time Mr. Dize spent on the water performing his duties as a launch operator.[10] The court then addressed the hours spent on refit projects. It noted that counsel for appellee estimated that those hours would amount to 3–5% of Mr. Dize's total work hours, a calculation not challenged by counsel for Mr. Dize.[11] The court noted that, "[i]f the time spent on re-fit projects were added thereto, it would still fall well short of 30%."

---

**10.** The court listed various percentages given by the parties, which shows that, despite some differences in calculations, the average percentage of time Mr. Dize spent on the water clearly was less than 20%.

**11.** Mr. Dize similarly makes no challenge on appeal to this calculation.

The court then addressed Mr. Dize's claim that it should look to other duties he performed, duties that Mr. Dize asserted were in the service of a vessel or fleet of vessels. The court listed these duties as including "maintenance of the vessels; enforcement of Association policies and work rules; servicing vessels in navigation; keeping shop supplies on hand to service the vessels; ordering fuel; managing the repair shop; dispatching pilots and launch operators to ships; assisting with cleaning the quarters on the boats; and supervising fueling." The court explained that, "[a]lthough time spent on other activities around the station that contributed to the operation of the vessels is not specifically enumerated in hours, for summary judgment purposes, the court will assume that it would raise the figure to over 30%."

The court then stated:

The dispositive question is whether the 30% requirement adopted by the Supreme Court applies only to time spent on the water or it should include other time spent in the performance of duties that might be viewed as seamen's duties or that contributed to the operation of vessels. There is no dispute that the time spent on the vessel by plaintiff falls well short of 30% of his work hours.

The court noted that the language used in *Chandris* supported the view that only time aboard a vessel in navigation should be counted. *See* 515 U.S. at 368–69, 115 S.Ct. 2172 (" 'If it can be shown that the employee performed a significant part of his work on board the vessel on which he was injured, with at least some degree of regularity and continuity, the test for seaman status will be satisfied.' ") (quoting 1B A. JENNER, BENEDICT ON ADMIRALTY § 11 a, 2–10.1 to 2–11 (7th ed. 1994)). It continued:

Furthermore, reflection upon the reason for the requirement adopted by the Court in *Chandris* convinces the court that this conclusion is the proper one. The purpose of the duration requirement is to ensure that the individual's service regularly exposes him to the perils of the sea. That purpose is best served by a test that measures time spent

aboard a vessel, regardless of whether other work activities contribute to the operation of the vessel. Time spent in other tasks on land, even if those activities are activities traditionally performed by seamen or are activities that contribute to the navigational operation of the vessel, do not contribute to this purpose. Therefore, the duration requirement must be measured in terms of time actually spent aboard vessels in navigation.

The court rejected Mr. Dize's argument that a departure from the 30% test was appropriate because Mr. Dize did not provide a "specific reason why the threshold is not [an] appropriate tool under the facts of the case." It concluded that, "as a matter of law, [Mr. Dize] is not a seaman within the meaning of the Jones Act, which compels the conclusion that his claim under the statute must fail." Accordingly, the court entered summary judgment in favor of the Association.[12]

This timely appeal followed.

## STANDARD OF REVIEW

Maryland Rule 2–501(f) governs motions for summary judgment and provides that a trial court "shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." *Accord Reiter v. Pneumo Abex, LLC,* 417 Md. 57, 67, 8 A.3d 725 (2010). When we review a circuit court's order granting summary judgment, " 'we accept all well-pled facts in the complaint, and reasonable inferences drawn from them, in a

---

12. Counsel for the parties also addressed Mr. Dize's claim that the Association was strictly liable for Mr. Dize's injuries because the vessel was unseaworthy. The court rejected Mr. Dize's unseaworthiness claim for two reasons: (1) Mr. Dize failed to adequately plead the action in his complaint; and (2) Mr. Dize failed to "establish[ ] the existence of a material dispute of fact as to whether the vessel was in navigation at the time of the injury." Mr. Dize did not challenge the circuit court's findings with respect to his unseaworthiness claim, and therefore, it is not before us for review.

light most favorable to the non-moving party.'" *Napata v. Univ. of Md. Med. Sys. Corp.*, 417 Md. 724, 732, 12 A.3d 144 (2011) (quoting *Sprenger v. PSC*, 400 Md. 1, 21, 926 A.2d 238 (2007)). "'[W]e independently review the record to determine whether the parties properly generated a dispute of material fact and, if not, whether the moving party is entitled to judgment as a matter of law.'" *Reiter*, 417 Md. at 67, 8 A.3d 725 (quoting *Livesay v. Baltimore County*, 384 Md. 1, 10, 862 A.2d 33 (2004)).

## DISCUSSION

### I.

### THE JONES ACT

■ The Jones Act permits any seaman who suffers a personal injury in the course of his employment to pursue a direct negligence claim against his or her employer. 46 U.S.C. § 30104. It provides "heightened legal protections . . . [to] seamen . . . because of their exposure to the 'perils of the sea.'" *Chandris*, 515 U.S. at 354, 115 S.Ct. 2172. To prevail on a negligence claim under the Jones Act, "a seaman must show: (1) that he is a seaman under the Act; (2) that he suffered injury in the course of his employment; (3) that his employer was negligent; and (4) that his employer's negligence caused his injury at least in part." *Martin v. Harris*, 560 F.3d 210, 216 (4th Cir.2009).

■ The Jones Act does not define the term "seaman," charging courts with the task of distinguishing sea-based and land-based maritime employees. *Chandris*, 515 U.S. at 355, 115 S.Ct. 2172. In *Chandris*, the Court articulated a two-part test to determine seaman status under the Jones Act. First, the worker's "duties must contribute to the function of the vessel or the accomplishment of its mission." 515 U.S. at 368, 115 S.Ct. 2172. Second, the worker "must have a connection to a vessel in navigation (or an identifiable group of vessels) that is substantial in terms of both its duration and its nature." *Id.* The Court noted that the Jones Act remedy was

"reserved for sea-based maritime employees whose work regularly exposes them to the special hazards and disadvantages to which they who go down to sea in ships are subjected." *Id.* at 370, 115 S.Ct. 2172 (quotation omitted). It explained that the substantial connection requirement was intended to "separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore[,] whose employment does not regularly expose them to the perils of the sea." *Id.* at 368, 115 S.Ct. 2172. *Accord Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 555, 117 S.Ct. 1535, 137 L.Ed.2d 800 (1997) ("For the substantial connection requirement to serve its purpose, the inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties *take him to sea.* This will give substance to the inquiry both as to the duration and nature of the employee's connection to the vessel and be helpful in distinguishing land-based from sea-based employees.") (emphasis added).

Thus, the Court stated, "[a] maritime worker who spends only a small fraction of his working time *on board* a vessel is fundamentally land based and therefore not a member of the vessel's crew." *Chandris*, 515 U.S. at 371, 115 S.Ct. 2172 (emphasis added). In determining what fraction of time is appropriate for separating land-based workers from sea-based workers, the Court adopted the "rule of thumb" set forth by the United State Court of Appeals for the Fifth Circuit, *i.e.,* that "[a] worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." *Id.*[13]

The question of who is a seaman under the Jones Act is a mixed question of law and fact. *Id.* at 369, 115 S.Ct.

---

13. The Court noted that this was a guideline, but the Fifth Circuit consistently had "declined to find seaman status where the employee spent less than 30 percent of his time *aboard* ship." *Chandris, Inc. v. Latsis*, 515 U.S. 347, 367, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995) (emphasis added).

2172. "The jury should be permitted ... to consider all relevant circumstances bearing on the two elements" of the test. *Id.* "Removing the issue from the jury's consideration is only appropriate where the facts and the law will reasonably support one conclusion...." *Id.* at 373, 115 S.Ct. 2172. "[W]here undisputed facts reveal that a maritime worker has a clearly inadequate temporal connection to vessels in navigation, the court may take the question from the jury by granting summary judgment or a directed verdict." *Id.* at 371, 115 S.Ct. 2172. *Accord Harbor Tug,* 520 U.S. at 560, 117 S.Ct. 1535 (to survive summary judgment, a Jones Act claimant bears the burden of alleging facts sufficient to demonstrate a genuine issue for trial).

## II.

### SEAMAN STATUS

■ To satisfy the first part of the test, that the worker contributes to the function of the vessel or the accomplishment of its mission, a claimant need only show that he "do[es] the ship's work." *Chandris,* 515 U.S. at 368, 115 S.Ct. 2172. This prong of the test is very broad and involves a claimant's eligibility for seaman's status. *Id.* There is no dispute here that this part of the test was satisfied; the parties agree that Mr. Dize's work contributed to the function or mission of the fleet of pilot launch vessels.

The issue raised on appeal relates to the second prong of the test, whether Mr. Dize's connection to a vessel in navigation was substantial in terms of duration and nature. Mr. Dize argues that the circuit court erred in considering only his time at sea in its analysis, arguing that time spent in maintenance of ships and "additional shore-based duties" should have been considered in the substantial connection analysis. Specifically, Mr. Dize contends that the circuit court erroneously excluded two categories of work activities: (1) maintenance activities, including "painting, sanding, [and] re-gelling the boats, changing their props, replacing worn zincs, changing rotors and shafts, changing rub rails, and the fueling of all

launches"; and (2) "shore-based duties," such as "running the Solomons Pilot Transfer Station/Maintenance Repair Facility," "enforcing association policies, keeping supplies on hand, cleaning the shop, managing paint and tools, and ordering fuel." Mr. Dize argues that, had these activities been considered, he would have satisfied the 30% requirement and avoided summary judgment.

The Association contends that the circuit court's "entry of summary judgment was proper" because Mr. Dize did not spend a sufficient amount of time aboard a vessel to attain seaman status. It argues that only time spent aboard a vessel should be credited as time spent in service to a vessel in navigation. Accordingly, it maintains that "mere assertions that [Mr. Dize] spent an additional 3–4 hours or 5–6 hours a day ... doing work in support of the vessel does not rise to the level of evidence substantial enough to defeat summary judgment" because neither the maintenance projects he performed on docked vessels nor his land-based duties constitute "working time aboard a vessel" or "time in service of a vessel," and they should not be credited toward the "30 percent 'temporal element' of seaman's status."

■ Case law supports the Association's argument, and the circuit court's conclusion, that the determination whether a person qualifies as a seaman pursuant to the Jones Act involves looking to whether the employee's duties were of a seagoing nature that exposed the employee to the perils of the sea. *See Harbor Tug*, 520 U.S. at 555, 117 S.Ct. 1535 ("[T]he inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties take him to sea. This will give substance to the inquiry both as to the duration and nature of the employee's connection to the vessel and be helpful in distinguishing land-based from sea-based employees."); *Nunez v. B&B Dredging, Inc.*, 288 F.3d 271, 276 (5th Cir.) (a worker must "spend a substantial part of his work time aboard the vessel" to qualify as a seaman), *cert. denied*, 537 U.S. 1045, 123 S.Ct. 620, 154 L.Ed.2d 517 (2002); *Sologub v. City of New York*, 202 F.3d 175, 180 (2d Cir.2000) (plaintiff's duties were land-based and did not have a sufficient

connection with a vessel in navigation, in terms of both duration and nature, "when analyzed in light of the Jones Act's intention to protect sea-based maritime workers and not land-based employees"); *Hollingsworth v. Anderson–Tully Co.*, 940 F.Supp. 967, 970 (N.D.Miss.1996) (employer entitled to summary judgment when plaintiff spent only a small fraction of his working time on board the vessel, and therefore, it was "clear that [plaintiff] was 'simply a land-based employee who happened to be working on the vessel' at the time of his injury"); *Dorr v. Maine Maritime Academy*, 670 A.2d 930, 933 (Me.1996) ("[B]ecause [plaintiff] spent only twenty-five percent of his time on board the Argo, he had 'only a transitory or sporadic connection to a vessel in navigation, and therefore [his] employment [did] not regularly expose [him] to the perils of the sea.'") (quoting *Chandris*, 515 U.S. at 368, 115 S.Ct. 2172). These cases comport with the Supreme Court's statement that the purpose of the Jones Act was to "separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea." *Chandris*, 515 U.S. at 368, 115 S.Ct. 2172.

In *Richard v. Mike Hooks, Inc.*, 799 So.2d 462, 467 (La. 2001), *cert. denied*, 535 U.S. 1018, 122 S.Ct. 1608, 152 L.Ed.2d 622 (2002), the Louisiana Supreme Court held that a repairman employed in a dockside yard, who spent more than 30% of his time repairing vessels, was not a seaman. It noted several factors in reaching this decision: the vessels on which Richard worked were dockside, some of which were on land when he was performing repairs; Richard never ate or slept on the vessels or kept "watch on the vessels overnight"; and he was "aboard small moving vessels once every month, for short durations." *Id.* at 467. It concluded that these circumstances showed that Richard "was a land-based employee, not a seaman." *Id.*

The circuit court here looked to all of Mr. Dize's activities in assessing whether Mr. Dize was a seaman under

the Jones Act. It properly focused on the activities he performed on board a vessel that actively subjected Mr. Dize to "the perils of the sea." There is no dispute that Mr. Dize's time aboard a pilot launch was less than 30% of his time.

Mr. Dize contends, however, that the 30% rule is merely a rule of thumb, and that the court would be justified in departing from the rule given the circumstances of his employment. The circuit court rejected that contention, stating that a reduction in the threshold was not authorized "without a showing of a specific reason why the threshold is not [an] appropriate tool under the facts of the case." We agree that Mr. Dize has not given any persuasive reason why the 30% rule should be rejected here.[14]

The circuit court properly determined, as a matter of law, that Mr. Dize was not a seaman under the Jones Act. Accordingly, it properly granted summary judgment in favor of the Association.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

---

**14.** Mr. Dize does not explain what standards a court would apply in deciding when to ignore the 30% standard adopted by the Supreme Court. One reason suggested by other courts is a recent change in duties. In *Becker v. Tidewater, Inc.*, 335 F.3d 376, 389 (5th Cir.2003), the court recognized an exception to the 30% rule in this situation, stating that (1) "an employee who has worked for years in an employer's shoreside headquarters and who is then reassigned to a ship in a classic seaman's job qualifies for seaman status even if he is injured shortly after reassignment"; and (2) "a worker who has been reassigned to a land-based job cannot claim seaman status based on prior service at sea." *Id.* 335 F.3d at 389–90. *Accord Reeves v. F. Miller & Sons, Inc.*, 967 So.2d 1178, 1184 (La.Ct.App.2007) (The narrow exception to the 30% rule applies when "an employee receives a new work assignment in which his *essential duties* are changed"; a court may then assess "his vessel-related work made on the basis of his activities in his new position"). This exception does not apply here.