868 So.2d 276 (2004)
Terry Lynn HAYLES
v.
SONAT EXPLORATION COMPANY, Applied Coating Services, Inc. and Southern Natural Gas Company.
No. 2002-CA-1890.
Court of Appeal of Louisiana, Fourth Circuit.
March 3, 2004.
Rehearing Applications Denied April 7, 2004.
*278 Robert J. Young, Jr., Young, Richaud & Myers, New Orleans, LA, for Plaintiff/Appellee.
David L. Reisman, Michael A. Golemi, Liskow & Lewis, New Orleans, LA, for Defendants/Appellants, Southern Natural Gas Co. and Zurich American Insurance Co.
H.F. Foster, III, Hugh M. Glenn, Jr. Bienvenu, Foster, Ryan and O'Bannon, New Orleans, LA, for Intervenor/Appellant, Zurich American Insurance Co.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge PATRICIA RIVET MURRAY, Judge MICHAEL E. KIRBY, Judge DAVID S. GORBATY, Judge Pro Tempore MOON LANDRIEU).
MICHAEL E. KIRBY, Judge.
The plaintiff, a paint foreman and roustabout by trade, injured his back on a platform in the Gulf of Mexico while lifting a spool piece within the course and scope of his work. After receiving workmen's compensation, the plaintiff, alleging to be a Jones Act seaman, sued his employer and its insurer. The trial court found the plaintiff was a Jones Act Seaman, and awarded him over one million dollars. We find the trial court committed a legal error by excluding impeachment evidence and it was manifestly erroneous in finding the plaintiff to be a seaman. Therefore, we reverse the trial court.

STATEMENT OF THE FACTS
On March 8, 1999, Terry Hayles was working on the Vermillion 149 fixed platform of Southern Natural Gas Company ("SNG"). Mr. Hayles alleges he injured his back while helping to lift a section of pipe, called a spool piece, on the platform. At the time of the incident Mr. Hayles was a payroll employee of Applied Coating Services, Inc. ("Applied Coating"), performing roustabout[1] work on the platform.
The plaintiff saw physicians for his lower back problems, but no surgery was ever performed.
Terry Hayles filed suit against SNG and Zurich American Insurance Company ("Zurich"). Zurich was the workmen's compensation insurer of Applied Coating and had paid medical expenses and workmen's compensation benefits to plaintiff as a result of the alleged accident pursuant to the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901, et seq.
At issue in the suit is whether the plaintiff is a Jones Act seaman, thereby allowing him to sue his employer. If the plaintiff does not quality as a Jones Act seaman, then he has no action against his employer and the workmen's compensation claim is his sole remedy for injury.

ACTION OF THE TRIAL COURT
On February 15, 2001, the trial court granted the plaintiff's motion for summary judgment declaring that Mr. Hayles was a Jones Act seaman. The trial court ruled in favor of the plaintiff despite deposition *279 and affidavit testimony from four witnesses that the plaintiff (1) was permanently assigned to a fixed platform, (2) spent no more than 20% of his work time aboard any vessel, (3) had no vessel related duties, and (4) was employed solely for the purpose of servicing, repairing and maintaining fixed platforms. We granted the writ application of the defendant, SNG, and reversed the trial court's ruling. On April 15-18, 2002, a bench trial occurred, after which the trial court again found the plaintiff was a Jones Act seaman. The trial court also found SNG was negligent and awarded damages of over One Million Dollars ($1,128,311.48).

ASSIGNMENTS OF ERROR
The defendants/appellants assign several errors to the trial court. First, they deem clearly wrong and manifestly erroneous the trial court's refusal to admit the plaintiff's social security disability application to impeach the plaintiff's testimony. Second, they assert the trial court committed manifest error and was clearly wrong in finding that the plaintiff was a Jones Act seaman. Third, they claim the trial court was manifestly erroneous and clearly wrong in finding SNG negligent for asking an experienced roustabout to lift a piece of equipment weighing about 50 pounds, and in failing to allocate any fault to the roustabout or his employer. Fourth, they aver the trial court abused its discretion in awarding $325,000 in pain and suffering damages in this unoperated back case in which the independent medical examiner concluded that Hayles was a malingerer with no physical impairment or limitations. Also, Hayles was videotaped engaging in physical activity just three days before he testified that he had been unable to engage in any physical activity for more than eight months. The defendants assign error to several other of the trial court's findings concerning plaintiff's failure to mitigate damages, travel expenses and the award of pre-judgment interest on awards of future damages.

STANDARD OF REVIEW
Appellate courts review factual findings under the manifest error rule. Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993).

DISCUSSION:
At trial, Hayles testified that he spent sixty percent (60%) of his work time operating, maintaining, repairing, and cleaning a vessel. To impeach Hayles, Southern Natural sought to use a Social Security Form (the "Form") filled out by Hayles in connection with his application for Social Security Disability Benefits. The Form required Hayles to detail his daily job duties. The Form was properly authenticated: Hayles identified it as "what I filled out for disability." La.Code Evid. Art. 901(B)(1). The Form is not hearsay, rather it is an admission of a party opponent. La.Code Evid. Art. 801(D)(2)(a). The Form directly contradicted Hayles' trial testimony in which he said he worked on the engines and generators, drove the boat, handled lines, fixed water pumps, and cleaned the boat. On the other hand, in response to the question on the Form "What did you do all day in this job?", Hayles stated: "lift heavy weight, filled out paperwork, climbed a lot of stairs, operated crane."
The trial court excluded the Social Security Form stating: "I don't want to hear anything about social security." It is clear from the record that the Form is relevant and probative as concerns Mr. Hayles' job description, it also aids in evaluating the veracity of Mr. Hayles' self-serving testimony. The Form falls within the ambit of La.Code Evid. Art. 801(D)(2)(a). The trial court was clearly erroneous in excluding it. Thus, we find the trial court's exclusion *280 of the Social Security Form from the record to be legally erroneous.
In any event, our review of the record reveals that even if the Form had not been excluded the trial court would have been manifestly erroneous and clearly wrong in finding plaintiff to be a seaman.
As the La. Supreme Court recognized in Stobart, supra:
However, where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination.
Stobart 617 So.2d at 882.
As our discussion reveals below, the record reasonably supports one finding alone: plaintiff was a roustabout working on a platform, and not entitled to an action under the Jones Act.
The Jones Act, 46 U.S.C.App. § 688(a) provides that "[a]ny seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law...." Thus, the threshold issue of this case is whether plaintiff meets the requirements of a seaman.
In order for the plaintiff to be a seaman under the Jones Act, he had to meet the requirements of Chandris v. Latsis, 515 U.S. 347, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995). In Chandris the United States Supreme Court set out a two-part test for seaman status:
First ... an employee's duties must contribute to the function of the vessel or to the accomplishment of its mission ... Second, ... a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature.
515 U.S. at 368, 115 S.Ct. at 2190. (Emphasis added.) The Court explicitly held that seaman status "necessarily includes a temporal element." 515 U.S. at 370, 115 S.Ct. at 2191; see also Richard v. Mike Hooks, Inc., XXXX-XXXX (La.10/16/01), 799 So.2d 462, 465. Thus, a "worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." Chandris, 515 U.S. at 371, 115 S.Ct. at 2191. We have followed the Chandris ruling and held that workers who spend less than 30% of their time on a vessel do not qualify as seaman. Powell v. Metropolitan Life Ins. Co., XXXX-XXXX, 2-3 (La.App. 4 Cir. 10/6/99), 746 So.2d 114, 115; Burgess v. C.F. Bean Corp., 98-3072 (La.App. 4 Cir. 8/18/99), 743 So.2d 251. Since the Chandris interpretation of the Jones Act, we know of no reported decisions in which a worker who spent less than 30% of his time working on a vessel was found to be a seaman.
The only evidence in the record that supports plaintiff's claim of seamanship status is his own testimony and that of his brother. The testimony of several disinterested witnesses, the erroneously excluded social security application form, contemporaneous records made by the plaintiff's own hand, and the vessel log, all contradict the plaintiff's testimony. Not much, according to the documents and testimony,[2] was done in furtherance of the M/V Sea Bulk Tallahassee's mission.
Part of Hayles' ordinary duties while working for Applied Coating consisted in filling out the Foreman's Daily Report. Upon reviewing his daily reports in deposition *281 testimony,[3] Mr. Hayles, had this exchange:

Defense Attorney: Twenty-eight time entries through June and July of 1997, every one of them indicated that your work was on the Vermillion 149 platform. Correct?

Plaintiff: Yes.
This exchange occurred after the plaintiff had gone through the daily reports he and his brother filled out for the winter of 1997, in which plaintiff admitted he spent all of his time on the platform, Vermillion 149.
In the twenty pages of daily reports covering several years that were filled out by Mr. Hayles, nowhere does he ever mention he is assigned to the M/V Sea Bulk Tallahassee (a/k/a Sea Robin III). The only mention of a boat was in conjunction with loading or unloading.[4] To the contrary, the daily reports are filled with detailed information about his work on the platform. The following is an example of the work plaintiff signed off on in his daily reports: "worked on pressurization vent on cellar;" "Cleaned up platform;" "Pressure washed roof deck and living quarters platform, top deck and cellar deck;" "Winterizing;" "Helped work on k-105 blowcase compressor. Hung tarps. Drained recovery tank for generator coolant fans."; "Put heat lights on water pumps at living quarters;" "Empty helicopter transport tank;" "Changed out glass window in door going to control room;" "Cut out & welded braces for chemical lines going to chemical tanks." Such roustabout work clearly does not meet the Chandris seaman requirements for connection to a vessel and duration coupled with maritime nature.
The testimony of disinterested parties such as James Kirby[5] and Dan Brown paint a coherent picture, that while the plaintiff did ride on the M/V Sea Bulk Tallahassee, he used it as a crew boat, or water taxi, to get from work site to work site. The testimony of the plaintiff's co-workers is that the majority of plaintiff's work was not maritime in nature, but that of platform work This is also reflected in the nature of the contract between the plaintiff's employer and the company to whom he was contracted out to work.
Upon thoroughly reviewing the record, we find a dearth of evidence supporting the plaintiff's contention that he spent a sufficient amount of time aboard the M/V Tallahassee, and that the time he did spend aboard the vessel, does not meet the functional requirements of Chandris, supra, in that he used the vessel only as a means to arrive at platforms.
Plaintiff cites Buford v. Cardinal Services, Inc., XXXX-XXXX (La.App. 3 Cir. 12/12/01), 801 So.2d 1269, for the proposition that he meets the requirements for seaman status. Plaintiff is mistaken in two respects: first, Buford states that seaman status is a mixed question of law and fact, and that the trial court was incorrect in granting summary judgment under those facts; second, those facts can be distinguished from these since Buford was assigned to five vessels over a period of several years. The plaintiff in this case was never assigned to any vessel.

*282 CONCLUSION

Also, we find the documentary evidence and the non-interested testimony in the case so overwhelmingly contradict the plaintiff's testimony that a reasonable factfinder could not credit it. The trial court was manifestly erroneous in finding plaintiff to be a seaman.
For the foregoing reasons, we find that plaintiff is not a Jones Act seaman and we reverse the Judgment of the trial court.
REVERSED.
MURRAY, J., Dissents and Assigns Reasons.
ARMSTRONG, C.J., concurs in the Result Reached by the Majority.
MURRAY, J., dissents and assigns reasons.
I do not agree that the trial court committed manifest error by finding the plaintiff, Mr. Hayles, to be a Jones Act seaman.
The evidence showed that Mr. Hayles, was a painter assigned to the M/V SEABULK TALLAHASSEE, a "paint" boat, and that he performed both traditional seaman's duties aboard the vessel and general roustabout work aboard the fixed platform to which the vessel was attached. The primary issue, therefore, is whether Mr. Hayles spent a sufficient amount of time aboard the vessel to satisfy the temporal guideline of Chandris v. Latsis, 515 U.S. 347, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995), which holds that to be classified as a seaman, a maritime worker must spend at least thirty percent of his time working aboard the vessel (or group of vessels) to which he is attached.
The majority holds that the trial court's finding of seaman status is not reasonable because it is based almost exclusively upon the testimony of Mr. Hayles and his brother, which was contradicted by the testimony of Mr. Hayles' coworkers and by documentary evidence such as daily foreman reports and vessel logs. However, the trial court's Reasons for Judgment clearly indicate that the court's decision was based primarily on credibility determinations. Mr. Hayles testified that he spent sixty percent of his time aboard the vessel, including virtually all of his time during the painting season, which lasted approximately seven months each year, as well as all the pig runs and chemical runs, which the trial court calculated to be approximately sixteen weeks each year. The plaintiff's brother, also a coworker, corroborated Mr. Hayles' testimony.
Counteracting this testimony were the daily foreman reports filled out by the plaintiff himself, the vessel logs and the testimony of others who worked with the plaintiff. However, the plaintiff testified that the foreman reports were used solely to record the number of hours he worked so that he could be paid; because of this, he often filled them after the fact for several weeks at a time, and therefore they did not accurately reflect the actual duties he performed, but only the hours he worked. Mr. Hayles also testified that the vessel meal and lodging logs were not always accurate. The trial judge clearly believed this testimony.
As for the other witnesses, mainly platform workers who testified that Mr. Hayles spent eight-five to ninety percent of his time on the platform with them, the trial court did not find their testimony to be credible, expressly stating in the Reasons for Judgment:
...[T]he witnesses supplied by defendants...were stereotypical in their answers, most of which were so similar they seemed to be rehearsed, particularly in details and percentages and particularly since all of the defendants' witnesses *283 worked different schedules from plaintiff.
It is axiomatic that an appellate court owes great deference to the finder of fact with regard to the credibility of witnesses, and that we are not to substitute our own evaluations of credibility of witnesses, and that we are not to substitute our own evaluations of credibility or inferences of fact for those of the trial court, as long as those of the trial court are reasonable. Rosell v. ESCO, 549 So.2d 840, 844-845 (La.1989). In the instant case, although there is documentary evidence that contradicts the plaintiff's testimony, I cannot say that the plaintiff's explanation for the contradiction is so implausible or unreasonable that a reasonable factfinder could not credit it. See Rosell, supra at 845. Therefore, I do not find manifest error in the trial court's conclusion that Mr. Hayles is a Jones Act seaman.
Accordingly, as there is clearly sufficient evidence of employer negligence under the Jones Act standard to support the trial court's finding of liability on the part of defendants, I respectfully dissent from the majority's reversal of the district court's judgment.
NOTES
[1] The term roustabout is defined as a dockworker or deckhand laborer, especially in the oil field.
[2] This is with the sole exception of the plaintiff's self-serving testimony.
[3] Prior to trial, Judge Berrigan of the U.S. Eastern District Federal Court, ordered the plaintiff be deposed on the issue of whether there was a fraudulent claim of Jones Act status. This was done despite objections by plaintiff's counsel.
[4] Unloading and loading of boats falls squarely within the ambit of the Longshoreman and Harbor Worker's Act, 33 U.S.C. § 901, et sequitur.
[5] James Kirby is no relation to the author of this opinion.