77 A.3d 1016

Jennifer Evans DIZE, Personal Representative
of the Estate of William Smith Dize

v.

ASSOCIATION OF MARYLAND PILOTS.

No. 56, Sept. Term, 2012.

Court of Appeals of Maryland.

Sept. 23, 2013.

Reconsideration Denied Nov. 21, 2013.

**152**

Michael H. Bereston (Michael H. Bereston, P.A., Annapolis, MD; Robert E. Joyce, Baltimore, MD), on brief, for petitioner.

James W. Bartlett, III (Alexander M. Giles of Semmes, Bowen & Semmes, Baltimore, MD), on brief, for respondent.

Argued before BARBERA, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, McDONALD and BELL *, JJ.

McDONALD, J.

Maritime law has long recognized the "special hazards and disadvantages to which they who go down to sea in ships are subjected," especially exposure to "the perils of the sea ... with little opportunity to avoid those dangers or to discover and protect themselves from them."[1] When maritime workers at sea suffer sickness or injury, they are entirely at the mercy of their employer, and it is often said that they are "wards of admiralty."[2] Federal law provides certain rights and protections to compensate for those risks. One such measure is the Jones Act, 46 U.S.C. § 30104, which provides a seaman with a cause of action against the seaman's employer for injuries incurred within the scope of employment.

---

* Bell, C.J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

**1.** *Seas Shipping Co. v. Sieracki,* 328 U.S. 85, 104, 66 S.Ct. 872, 90 L.Ed. 1099 (1946).

**2.** E.g., *The Arizona v. Anelich,* 298 U.S. 110, 123, 56 S.Ct. 707, 80 L.Ed. 1075 (1936).

Who is a "seaman"? This is a recurring question in the case law under the Jones Act. The Supreme Court offered guidance in three decisions in the 1990s, but subsequent lower court decisions have resulted in a tempest of varying, and often conflicting, interpretations.[3] Although as a state court we do not speak authoritatively on this issue, it is our task in this case to discern what we can from these decisions.[4]

In the complaint under the Jones Act that commenced this case, William S. Dize[5] alleged that he was injured as a result of the negligence by his employer, Respondent Association of Maryland Pilots (the "Association"). Whether that claim was properly made under the Jones Act depends on whether Mr. Dize was a "seaman" at the time of the alleged negligence. To distinguish seamen from land-based workers, the Supreme Court has adopted a "rule of thumb" that a seaman must ordinarily have spent at least 30 percent of work time in

---

**3.** *See, e.g.,* Kulkarni, *The Seaman Status Situation: Historical Perspectives and Modern Movements in the U.S. Remedial Regime,* 31 Tul. Mar. L.J. 121 (2006) ("Unfortunately, the judiciary has been less than clear in addressing the topic of seaman status"); Robertson, *The Supreme Court's Approach to Determining Seaman Status: Discerning the Law Amid Loose Language and Catchphrases,* 34 J. Mar. L. & Com. 547 (2003) ("[S]eaman status is vigorously litigated in case after case. The Supreme Court of the United States is regularly beseeched for guidance, often by those who later wish they had not asked"); *Hillsman, Still Lost In The Labyrinth: The Continuing Puzzle of Seaman Status,* 15 U.S.F. Mar. L.J. 49 (2003) ("Imagine, then, how frustrating it is to practice in the 'zone of uncertainty,' the realm of the poor Jones Act lawyers who scratch out a living representing 'injured maritime workers employed at the border of harbor/work seaman status' ").

**4.** Although federal courts have exclusive, original jurisdiction over admiralty and maritime cases pursuant to 28 U.S.C. § 1333, a "savings to suitors" clause in the statute provides state courts with concurrent jurisdiction for *in personam* claims such as the Jones Act. *See, e.g., Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 221–23, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986). State courts must abide by federal maritime standards and apply the Act "uniformly." *Garrett v. Moore–McCormack Co.,* 317 U.S. 239, 244, 63 S.Ct. 246, 87 L.Ed. 239 (1942).

**5.** The complaint was filed by Mr. Dize. After judgment was entered against him in the lower courts, he filed the petition for certiorari in this matter, but died after we granted the petition. His wife Jennifer has been substituted as Petitioner.

service of a vessel in navigation. We hold, consistent with the purpose of the Jones Act and guidance of the Supreme Court, that the time Mr. Dize spent maintaining vessels that were dockside or ashore is not to be considered and, accordingly, that the lower courts correctly concluded that he was not a seaman.

## Background

*Remedies for Seamen*

■  Remedies for employment-related injuries of seamen are provided under federal admiralty law rather than state worker compensation schemes. *Southern Pac. Co. v. Jensen,* 244 U.S. 205, 218, 37 S.Ct. 524, 61 L.Ed. 1086 (1917). Two of those remedies have long existed under general maritime law, but are limited in scope. A third, broader, remedy has been created by statute.

■  Under general maritime law at the beginning of the 20th century, a maritime worker had two potential claims for injuries incurred during employment in service of a vessel: seaworthiness and "maintenance and cure." A ship owner has an "absolute, non-delegable" duty to a seaman to provide a seaworthy vessel; liability for an unseaworthy vessel attaches regardless of fault. *Chisholm v. UHP Projects,* 205 F.3d 731, 734 (4th Cir.2000). The warranty of seaworthiness applies only to vessels that are "in navigation." *Roper v. United States,* 368 U.S. 20, 82 S.Ct. 5, 7 L.Ed.2d 1 (1961). "A claim for maintenance and cure relates to the vessel owner's obligation to provide food, lodging, and medical services to a seaman injured while serving the ship." *Lewis v. Lewis & Clark Marine, Inc.,* 531 U.S. 438, 441, 121 S.Ct. 993, 148 L.Ed.2d 931 (2001).

■  Neither "seaworthiness" nor "maintenance and cure" provided a seaman with a cause of action for negligence of a ship owner. *The Osceola,* 189 U.S. 158, 175, 23 S.Ct. 483, 47

L.Ed. 760 (1903).[6]  Congress created such a cause of action when it passed the Jones Act in 1920.  That statute reads, in pertinent part:

A seaman injured in the course of employment or, if the seaman dies from the injury, the personal representative of the seaman may elect to bring a civil action at law, with the right to a trial by jury, against the employer.

46 U.S.C. § 30104.  To prevail on a negligence claim under the Jones Act, a seaman must show:  "(1) that he is a seaman under the Act;  (2) that he suffered injury in the course of his employment;  (3) that his employer was negligent;  and (4) that his employer's negligence caused his injury at least in part." *Martin v. Harris*, 560 F.3d 210, 216 (4th Cir.2009).[7]  The term "seaman" is not defined in the Jones Act. But, as in many cases under the Jones Act, the interpretation of that term is key to the decision of this case.

*Mr. Dize's Employment*

Mr. Dize initially worked for the Association as a launch boat operator at the Solomons Island Transfer Station in Solomons, Maryland, beginning in the 1980s.  In that capacity, he transported pilots to and from large commercial ships traveling on the Chesapeake Bay—a duty that he continued to perform after he was promoted to assistant station manager in 1997.  As assistant station manager, Mr. Dize worked every other week but, during the weeks he was on duty, he was on-call all day every day.  As will become apparent, the allocation

---

**6.**  In that case, the Court applied the fellow servant defense from tort law to conclude a seaman could not sue a ship owner for negligence.

**7.**  The remedy provided for seamen in the Jones Act was based on a remedy for negligence that Congress had provided for railroad workers when it enacted the Federal Employers' Liability Act (FELA) in 1908. *See* 45 U.S.C. § 51.  Indeed, the Jones Act expressly incorporates law relating to FELA. 46 U.S.C. § 30104 ("Laws of the United States regulating recovery for personal injury to, or death of, a railway employee apply to an action under this section").  Thus, principles developed in the case law under FELA are applied in Jones Act cases. *Kernan v. Am. Dredging Co.*, 355 U.S. 426, 439, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958).

of his work time among the various duties of assistant station manager is significant for determining whether he was a seaman at the time of the alleged negligence in 2007.

During the five-year period prior to his injury, Mr. Dize spent somewhat less than 20 percent of his time operating launches.[8] He also did maintenance work on the launches, both in the water and while the boats were undergoing overhaul and refits in dry dock. In deposition testimony, Mr. Dize estimated that, while the launches were tied up at the dock, he spent between 42 and 50 percent of his time on maintenance tasks such as painting; sanding; changing propellers, rotors, shafts, and rub rails; replacing zinc anodes; cleaning the boat interiors; and fueling. Relying on its records, the Association also estimated that between 3 and 5 percent of Mr. Dize's time was spent on overhaul and refits while the boats were out of the water. Adding up those estimates, Mr. Dize calculated that well over 60 percent of his time was spent operating, or performing maintenance on, launch boats. Mr. Dize also performed general maintenance on station buildings and property, ordered work supplies and groceries, unloaded trucks, installed rugs, mowed the lawn, and cleaned the docks.

In January 2008, Mr. Dize was diagnosed with silicosis. He thereafter suffered increasing breathing difficulties, required supplemental oxygen to live, and eventually died from his illness in September 2012.

*Negligence Action under the Jones Act*

On May 22, 2008, Mr. Dize sued the Association in the Circuit Court for Baltimore City, pursuant to the Jones Act, alleging negligence in regard to injuries he suffered from

---

8. In the Association's original filings with the trial court, it calculated that Mr. Dize spent approximately 19 percent of his work time in 2006 and 2007 piloting launches. However, in its briefs submitted to the Court of Special Appeals and this Court, the Association contends that a recalculation of Mr. Dize's work time yields a figure closer to 16 percent. In any event, use of the larger figure would not change the analysis or our conclusion on the ultimate issue of seaman status.

exposure to free silica during a sandblasting project.[9] The complaint alleged that, as part of his duties in June 2007, Mr. Dize sandblasted paint off the bottom of an Association boat in dry dock, using coal slag abrasive that contained free silica. It further alleged that the Association did not perform adequate occupational safety testing, as required by federal and State work safety standards, to determine whether Mr. Dize was fit to participate in sandblasting or should have worn a respirator mask while doing so. Because he had previously suffered from lung disease, the complaint alleged, he likely would have been excluded from the work as a result of the test.

In January 2010, both Mr. Dize and the Association filed motions for summary judgment.[10] The Association argued that Mr. Dize was not a seaman for purposes of the Jones Act and therefore could not maintain a negligence claim.

On February 25, 2010, the Circuit Court granted the Association's motion for summary judgment on the Jones Act claim on the basis that Mr. Dize was not a seaman at the time of his injury.[11] In doing so, the court concluded that Mr. Dize had not spent 30 percent of his work time in service of vessels in navigation, as required by a "rule of thumb" adopted by the

---

**9.** The complaint referred to the vessel on which Mr. Dize worked as "unseaworthy," but only in the context of what was entitled a claim under the Jones Act. Mr. Dize later filed an amended complaint to assert a cause of action for maintenance and cure. The Association moved to strike the amended complaint as untimely and the Circuit Court granted that motion. That decision is not before us.

**10.** The action had been stayed for several months when the Association filed a complaint for limitation of liability in federal district court under the Exoneration and Limitation of Liability Act, 46 U.S.C. § 30501 *et seq.* In February 2009, the federal district court dissolved the stay and administratively closed the federal action. After dissolution of the stay, the Association impleaded Harsco Corporation, the manufacturer of the sandblasting material.

**11.** The court also granted summary judgment in favor of the Association on the issue of unseaworthiness, on the grounds that it had not been pled in the complaint and that the vessel he was sandblasting was not "in navigation" at the time of the alleged injury.

Supreme Court to decide seaman status for Jones Act cases. Mr. Dize appealed. On March 8, 2012, the Court of Special Appeals, in an unreported opinion, affirmed the Circuit Court. At the request of the Association, the court reissued its decision as a reported opinion on May 31, 2012. *See Dize v. Ass'n of Md. Pilots,* 205 Md.App. 176, 44 A.3d 1033 (2012).

We granted certiorari to resolve whether, in determining Mr. Dize's status for purposes of the Jones Act, work time spent maintaining vessels that are moored, dockside, or ashore is to be counted along with time spent at sea.

## Discussion

### *Standard Of Review*

■■■■ A Circuit Court may grant summary judgment if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Maryland Rule 2–501(f). With specific reference to the Jones Act, the issue of seaman status is a mixed question of law and fact, for which summary judgment is appropriate "where the facts and law reasonably support only one conclusion." *Harbor Tug & Barge Co. v. Papai,* 520 U.S. 548, 554, 117 S.Ct. 1535, 137 L.Ed.2d 800 (1997) (citations omitted). Our role is to review whether the Circuit Court's legal conclusions were correct without according any special deference to that court. *D'Aoust v. Diamond,* 424 Md. 549, 574, 36 A.3d 941 (2012).

### *Seaman Status under the Jones Act*

As indicated above, the Jones Act does not itself define the term "seaman." Courts have defined the term affirmatively by looking to the meaning of the term in the general maritime law that preceded the Jones Act and negatively by distinguishing seamen for purposes of the Jones Act from land-based maritime workers covered by the less generous and later-enacted Longshore and Harbor Workers' Compensation Act ("LHWCA"). The key factors that are currently applied by the courts, including a numerical rule of thumb, derive from three Supreme Court decisions during the 1990s.

*Relation to Seaman under General Maritime Law*

When the Supreme Court upheld the constitutionality of the Jones Act a few years after its passage, it appeared to equate seaman status under the statute to that under general maritime law. *Panama R. Co. v. Johnson,* 264 U.S. 375, 388–89, 44 S.Ct. 391, 68 L.Ed. 748 (1924). Shortly thereafter, however, the Court, stating that "words are flexible," held that the statute also applied to an injured longshoreman even though a longshoreman did not fit the common understanding of a "seaman." *Int'l Stevedoring Co. v. Haverty,* 272 U.S. 50, 52, 47 S.Ct. 19, 71 L.Ed. 157 (1926) (stevedore injured while storing freight in ship hold covered by the Act).

*Relation to Workers Covered by LHWCA*

In 1927—one year after *Haverty*—Congress enacted the LHWCA. That statute provides compensation and other remedies for land-based maritime employees who suffer injuries while working on navigable waters "including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel." 33 U.S.C. § 903(a). The LHWCA specifically omitted from its coverage "a master or member of a crew of any vessel." 33 U.S.C. § 902(3)(G). The Supreme Court held that this exclusion is synonymous with "seaman" under the Jones Act and that the LHWCA "confine[d] the benefits of the Jones Act to the members of the crew of a vessel." *Swanson v. Marra Bros.,* 328 U.S. 1, 7, 66 S.Ct. 869, 90 L.Ed. 1045 (1946). As construed in *Swanson,* the LHWCA thus had the effect of narrowing *Haverty*'s broad construction of the term "seaman" under the Jones Act.

*Efforts to Distinguish Seamen from Land–Based Workers*

In the 12 years following *Swanson,* the Court continued to provide guidance on the definition of "seaman," although its holdings were not easily condensed into an understandable standard. In *Desper v. Starved Rock Ferry Co.,* 342 U.S. 187, 72 S.Ct. 216, 96 L.Ed. 205 (1952), the Court held that a pilot of sightseeing vessels who was killed during off-season work on a

ship that had been taken out of the water was not a seaman in those circumstances. The Court found persuasive that "there was no vessel engaged in navigation" and that the activity that caused the injury was not typically a duty of a seaman. 342 U.S. at 190, 72 S.Ct. 216.

Nevertheless, five years later, in determining whether a handyman from an anchored dredge could recover under the Jones Act for injuries suffered while transporting equipment on the shore, the Court decided that whether the vessel was in transit during the worker's employment was not pertinent to seaman status. Rather, the designation "seaman" was appropriate where "substantially all" of the employee's duties were performed "on or for" the vessel. *Senko v. La Crosse Dredging Corp.*, 352 U.S. 370, 372, 77 S.Ct. 415, 1 L.Ed.2d 404 (1957). That the injury occurred on land was not relevant to the analysis, although it was appropriate to consider whether the worker would "have a significant navigational function" when the vessel was in transit. 352 U.S. at 373, 77 S.Ct. 415. A seaman therefore did not necessarily have to be employed on a vessel in transit at the time of the injury, but perhaps had to have duties that assisted in the navigation of a vessel. *See Butler v. Whiteman,* 356 U.S. 271, 78 S.Ct. 734, 2 L.Ed.2d 754 (1958).

For the next three decades, the Supreme Court had nothing further to say on the subject. Meanwhile, the federal circuit courts of appeals split on whether the worker's employment had to aid the navigation of a vessel in order to qualify for Jones Act coverage. *See* DeGravelles, *Harbor Tug & Barge Co. v. Papai: Another Turn in the Labyrinth?* 10 U.S.F. Mar. L.J. 209, 211 (1998).

*Deriving the Modern Test for Seaman Status*

The Supreme Court revisited the question of seaman status under the Jones Act in three cases during the 1990s in which it attempted to devise a workable test.

*Wilander—whether the worker must aid navigation*

In *McDermott Int'l, Inc. v. Wilander,* 498 U.S. 337, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991), the Court held that a

worker on a paint boat who supervised sandblasting and painting of oil drilling platforms at sea was a "seaman" even though he did not aid in the navigation of the vessel to which he was assigned. Reasoning that Congress had not intended to limit the Jones Act only to employees with navigational duties and noting that all workers on ships in navigation risk the perils of the sea, the Court employed a broader test: whether a worker asserting seaman status has a "connection" to a vessel in navigation—*i.e.*, whether the employee "contribute[s] to the function of the vessel or to the accomplishment of its mission" and does "the ship's work." 498 U.S. at 354–55, 111 S.Ct. 807.

*Chandris—articulating a two-part test*

Four years later, the Court elaborated on the extent and nature of the required "connection" in *Chandris, Inc. v. Latsis,* 515 U.S. 347, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995). Mr. Latsis was an engineering supervisor who worked primarily from an office on shore but occasionally traveled on his employer's vessels. On one such trip, he injured his eye and received, he alleged, substandard care from the ship's doctor that resulted in a significant loss of vision in the eye. After he recuperated from his injury on shore, he returned to the ship and sailed to Germany, where he remained with the vessel while it underwent renovations in dry dock. Six months later, he traveled back to the United States aboard the ship. In his lawsuit under the Jones Act, Mr. Latsis claimed that he spent 72 percent of his employment working on his employer's vessels, while the employer put the figure at closer to 10 percent. The trial court instructed the jury that the time that Mr. Latsis spent with the ship while it was in drydock could not be considered because the ship was not "in navigation." The jury returned a verdict in favor of the ship owner on the basis that Mr. Latsis was not a seaman.

The Supreme Court held that the trial court had defined "in navigation" too narrowly and remanded the case for a retrial. The Court also stated certain principles for the determination of seaman status. The Jones Act is "reserved for sea-based

maritime employees whose work regularly exposes them to the special hazards and disadvantages to which they who go down to sea in ships are subjected." *Chandris,* 515 U.S. at 370, 115 S.Ct. 2172 (internal citations omitted).[12] The policy of the Act is "to protect sea-based maritime workers, who owe their allegiance to a vessel, and not land-based employees, who do not." *Id.* at 376, 115 S.Ct. 2172. Accordingly, whether an employee is covered by the Jones Act depends on the status of the employee's relationship with the vessel or vessels, not the cause or place of the injury.

To aid in the analysis, the Court created a two-part test. To be a "seaman" under the Jones Act, the employee must (1) contribute to the function of a vessel or to the accomplishment of its mission, and (2) have a connection to a vessel in navigation that is substantial in both duration and nature. *Chandris,* 515 U.S. at 368, 115 S.Ct. 2172. The Court explained that the purpose of the latter requirement was to give "full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation and, therefore, whose employment does not regularly expose them to the perils of the sea." *Id.*

As to the temporal element of its test—*i.e.,* whether the duration of the employee's connection to a vessel in navigation was substantial—the Court favorably referred to a rule of thumb that had been developed in the Fifth Circuit: "a worker who spends less than about 30 percent of his time in the service of a vessel in navigation" would presumably not satisfy the substantial duration requirement. *Chandris,* 515 U.S. at 371, 115 S.Ct. 2172. The Court also referred to this rule of thumb as computing the percentage of time "on

---

12. The Court cautioned that an employee is not a "seaman" simply because the employee is doing "seaman's work" at the time of injury and therefore "[s]eaman status is not coextensive with seaman's risks" if the employee does not spend a significant portion of work time aboard a vessel. *515 U.S. at 361, 115 S.Ct. 2172.*

vessels" or "aboard ship." *Id.* at 367, 115 S.Ct. 2172.[13] The Supreme Court characterized 30 percent as a guideline and noted that "departure from it will certainly be justified in appropriate cases." *Id.* at 371, 115 S.Ct. 2172.

In a passage that has generated some confusion as to where an employee may work for the time to be counted toward seaman status under the 30 percent guideline, the Court also considered whether a vessel in dry dock was necessarily not "in navigation." The Court held that a vessel undergoing repairs or spending a relatively short period of time in dry dock is still "in navigation"; at some point, however, repairs become "sufficiently significant" that the ship must be considered out of navigation. *Chandris*, 515 U.S. at 374, 115 S.Ct. 2172. In the case before it, the Court held that, in light of the conflicting evidence in the record as to the significance of the dry dock repairs and the potential significance of evidence from that period as to Mr. Latsis' duties, the trial court's jury instruction that the period in dry dock was to be disregarded was erroneous. Accordingly, the Court remanded the case for a new trial.

*Harbor Tug—connection to vessel must take worker "to sea"*

Only two years after the *Chandris* decision, the Court provided a further clarification that seemingly narrowed the definition of seaman. In *Harbor Tug & Barge Co. v. Papai,* 520 U.S. 548, 117 S.Ct. 1535, 137 L.Ed.2d 800 (1997), the

---

**13.** This description appears consistent with the Fifth Circuit decisions cited by the Court. *See Barrett v. Chevron U.S.A., Inc.,* 781 F.2d 1067, 1073–76 (5th Cir.1986) ("[I]t must be shown that [the claimant] performed a significant part of his work *aboard the vessel* with at least some degree of regularity and continuity. . . . Because [the appellant] did not perform a substantial portion of his work *aboard a vessel or fleet of vessels,* he failed to establish that he was a member of the crew of a vessel.") (emphasis added); *Lormand v. Superior Oil Co.,* 845 F.2d 536, 541 (5th Cir.1987) (noting that the appellant "spent proportionally even less time working *on a vessel*" than did the appellant in *Barrett*) (emphasis added); *Palmer v. Fayard Moving & Transp. Corp.,* 930 F.2d 437, 439 (5th Cir.1991) (finding that the plaintiff did not show that she "performed a substantial part of her work *on board a vessel*") (emphasis added).

Court held that a deckhand who never went to sea and was injured during a one-day painting assignment on a tugboat was not a seaman under the Jones Act. The Court emphasized that seamen are "those workers who face regular exposure to the perils of the sea." 520 U.S. at 560, 117 S.Ct. 1535. Accordingly, "[f]or the substantial connection requirement to serve its purpose, the inquiry into the *nature* of the employee's connection to the vessel must concentrate on whether the employee's duties take him to sea. This will give substance to the inquiry both as to *duration and nature* of the employee's connection to the vessel and be helpful in distinguishing land-based from sea-based employees." *Id.* at 555, 117 S.Ct. 1535 (emphasis added). Thus, although the Court in that case was focused on the nature of the employee's connection to a ship in navigation, it related the seagoing nature of the employee's duties to the duration test as well. In the case before it, the Court held that the deckhand did not have seaman status in part because his duties "did not include any seagoing activity" but consisted only of maintenance work while the boat was docked. *Id.* at 559, 117 S.Ct. 1535.

### Application of the Chandris Test to Mr. Dize

The resolution of this case turns on the application of the *Chandris* test to the circumstances of Mr. Dize's employment. Under that test, Mr. Dize would qualify as a seaman under the Jones Act if his position (1) contributed to the function of a vessel or to the accomplishment of its mission, and (2) had a connection to a vessel in navigation that was substantial in both duration and nature. The parties agree that the first prong is satisfied, and also that, as to the second prong, Mr. Dize worked on vessels "in navigation." Therefore, the only issue is whether Mr. Dize's position had a connection to those vessels that was substantial in both duration and nature.

*Application by the Circuit Court and Court of Special Appeals*

The Circuit Court concluded that, on the undisputed facts, Mr. Dize did not have a connection with a fleet of vessels in navigation that was substantial in duration. The court calcu-

lated that the time Mr. Dize spent on water operating launches, which comprised less than 20 percent of his work time, did not satisfy the 30 percent rule of thumb adopted in Chandris. For purposes of the Association's summary judgment motion, the Circuit Court assumed that the additional hours that Mr. Dize spent maintaining and servicing vessels, whether those vessels were moored at the dock or on shore for repairs, when added to the hours "on the water," would have put Mr. Dize over the 30 percent threshold. But the court believed "the number of these hours is not material" and declined to count them. The Circuit Court explained its reasoning:

> The purpose of the duration requirement is to ensure that the individual's service regularly exposes him to the perils of the sea. That purpose is best served by a test that measures time spent aboard a vessel, regardless of whether other work activities contribute to the operation of a vessel. Time spent in other tasks on land, even if those activities are activities traditionally performed by seamen or are activities that contribute to the navigational operation of the vessel, do not contribute to this purpose. Therefore, the duration requirement must be measured in terms of time actually spent aboard vessels in navigation.

In answer to Mr. Dize's argument that the court should deviate from the 30 percent rule of thumb, as *Chandris* indicated could be appropriate in some circumstances, the Circuit Court noted that Mr. Dize had not provided a specific reason for such a departure.

On appeal, the Court of Special Appeals agreed that the focus should be on "activities [Mr. Dize] performed on board a vessel that actively subjected [him] to the perils of the sea." 205 Md.App. at 193, 44 A.3d 1033. It held that maintenance projects that Mr. Dize undertook on docked vessels and his various land-based duties should not be counted toward the 30 percent threshold. *Id.* at 191, 44 A.3d 1033.

In our review of this case, we are charged with construing the Jones Act "uniformly" with the other federal and state

courts that decide these cases. *Garrett v. Moore–McCormack Co.*, 317 U.S. 239, 244, 63 S.Ct. 246, 87 L.Ed. 239 (1942). When one attempts to apply the case law from the various federal circuits and state courts under the Jones Act, one encounters a bewildering array of decisions in which there is a citation to support any outcome and no outcome that fits comfortably with every precedent. In such circumstances, we must, like the Circuit Court, focus on the purpose of the statute and the guidance of the Supreme Court in its most recent interpretations of the Jones Act.

*The 30 Percent Test and Going to Sea*

As noted above, the Supreme Court in *Chandris* used two different phrasings to refer to the 30 percent rule of thumb—in one instance, stating that an employee must spend at least 30 percent of the employee's time "aboard ship" to be a seaman; in the other, declaring that an employee who spent less than 30 percent of work time "in the service of a vessel in navigation" would fail the test. *Chandris,* 515 U.S. at 367, 371, 115 S.Ct. 2172. The Court thus apparently equated "in the service of a vessel in navigation" with "aboard ship." Accordingly, many courts have concluded that, for purposes of the duration requirement, an employee must spend at least 30 percent of the employee's time aboard or on a vessel to be a seaman.[14]

---

**14.** *See Sologub v. City of New York,* 202 F.3d 175, 180 (2d Cir.2000); *Nunez v. B & B Dredging, Inc.,* 288 F.3d 271, 273 (5th Cir.2002) (employee who only spent 10 percent of time aboard vessels not a seaman); *Landry v. Specialty Diving of La.,* 299 F.Supp.2d 629, 634 (E.D.La.2003) (employee who spent less than 5 percent of work time aboard a vessel not a seaman); *In re Endeavor Marine,* 234 F.3d 287, 292 (5th Cir.2000) (employee who spent almost all of his time "on the vessel" was a seaman); *Naquin v. Elevating Boats, LLC,* 842 F.Supp.2d 1008, 1017 (E.D.La.2012) (employee's testimony that he spent at least 70 percent of his time "working aboard vessels" was sufficient to satisfy duration element for summary judgment purposes); *Hayles v. Sonat Exploration Co.,* 868 So.2d 276, 280–81 (La.App.2004) ("[W]orkers who spend less than 30% of their time on a vessel do not qualify" as seamen, and plaintiff did not spend "a sufficient amount of time aboard" the vessel); *Roberts v. Cardinal Servs., Inc.,* 266 F.3d 368, 377 (5th Cir. 2001) ("[A] worker who aspires to seaman status must show that at least 30 percent of his time was spent on vessels. . . .").

The parties have debated whether time "aboard ship" also must be "at sea" in order to count for purposes of the 30 percent guideline. The cases that originated the guideline did not require that time aboard ship be at sea [15] and a number of courts have held, explicitly or implicitly, that a worker may be "aboard" a vessel when it is moored or dockside (or perhaps even on the shore for repairs).[16]

But this broader understanding of what it means to be "aboard ship" would seem to qualify many land-based workers for seaman status. *Harbor Tug* offers useful clarification: To give "substance to the inquiry" as to the nature and duration of the employee's connection to the vessel and be "helpful in distinguishing land-based from sea-based employees," a court must "concentrate on whether the employee's duties take him to sea." *Harbor Tug,* 520 U.S. at 555, 117 S.Ct. 1535.

One might incorporate *Harbor Tug* 's emphasis on sea-going duties into the durational connection test by requiring, as the Circuit Court held, that the employee must spend at least 30

---

**15.** Contrary to the Association's assertions, the Fifth Circuit cases giving rise to the 30–percent rule do not establish that one must be *voyaging at sea* to be "aboard" a vessel. In *Barrett v. Chevron, U.S.A., Inc.,* 781 F.2d 1067, 1074 (5th Cir.1986), and *Lormand v. Superior Oil Co.,* 845 F.2d 536, 540–41 (5th Cir.1987), the employees seeking seaman status spent up to 80 percent of their time on offshore platforms and "jack-up" vessels supported by legs that extended to the seabed— not vessels that actually floated upon the water. In *Palmer v. Fayard Moving & Transp. Corp.,* 930 F.2d 437 (5th Cir.1991), the plaintiff spent more than 80 percent of her time wholly on land; furthermore, that case describes the rule of *Barrett* and *Lormand* as merely requiring work "on vessels." *Id.* at 439. These three cases did not hold that one must be voyaging to be considered "aboard" a vessel.

**16.** *See In re Endeavor Marine, Inc.,* 234 F.3d 287, 291–92 (5th Cir.2000) (holding that the employee was "aboard" a vessel when working on a moored barge); *Smith v. Kanawha River Terminals, LLC,* 829 F.Supp.2d 401, 406–07 (S.D.W.Va.2011) (same). Similarly, in *Naquin v. Elevating Boats, LLC,* 842 F.Supp.2d 1008, 1017 (E.D.La.2012), the court found that an employee was "aboard" liftboats that were either moored or jacked-up. (Although the conclusion about jacked-up vessels appears to be contrary to the Fifth Circuit's pre-*Chandris* case law on the 30–percent rule, even just the time spent by the *Naquin* plaintiff on moored vessels—approximately 35 percent—would have been sufficient under the court's interpretation of the test.)

percent of the employee's time actually at sea. This understanding also appears in two recent federal court decisions. *Clark v. Am. Marine & Salvage*, 494 Fed.Appx. 32, 35 (11th Cir.2012) (counting only hours spent on work that was of "a seafaring nature" toward the 30 percent threshold); *Casser v. McAllister Towing & Transp. Co.*, 2010 WL 5065424 at *3 (S.D.N.Y.2010) (counting only "sea time" in which employee was on vessels that were "actually underway"). This is a straightforward rule that is easy to apply and thus has great appeal. But it is somewhat at odds with the discussion of the "in navigation" requirement in *Chandris* and other courts' analysis of the "substantial nature" determination under *Harbor Tug*.

*"In Navigation," "Seagoing Nature," and the Totality of the Circumstances*

Under *Chandris*, a vessel need not be in transit on the water in order to be considered "in navigation." In that case, the Court remanded the case for a jury determination whether the ship in question was "in navigation" during a six-month stay in dry dock. In light of that holding, courts have held that a vessel may remain "in navigation" even if it has been removed from the water.[17]

With respect to the statement in *Harbor Tug* that the employee's duties must be of a "seagoing nature, subjecting him to the perils of the sea," the lower courts have reached a variety of interpretations. As noted above, some courts have read this in conjunction with *Chandris* to require that the worker spend at least 30 percent of the worker's time at sea. But other courts have understood this to be a requirement

---

**17.** *Carter v. Bisso Marine Co.*, 238 F.Supp.2d 778, 783–84 (E.D.La.2002) (28–foot survey boat transported between projects on land by a trailer is not necessarily out of navigation); *see also Smith v. Kanawha River Terminals LLC*, 829 F.Supp.2d 401, 406–08 (S.D.W.Va.2011) (floating, unanchored barge moored to a dock is not necessarily out of navigation); *Delange v. Dutra Const. Co.*, 183 F.3d 916, 920 (9th Cir.1999) (seaman status determined to be a valid jury question where the employee worked on a barge that only moved four times in five months).

only that the employee's duties take the employee to sea, not necessarily that the seagoing activities exceed 30 percent of work time.[18]  Under that view, a worker who "never went to sea" could not be a Jones Act seaman.[19]  Other courts, however, have concluded that *Harbor Tug* did *not* create a requirement that an employee's duties "literally carry him to sea" in order to achieve seaman status.[20]

Some courts have scrapped specific analysis of the elements of the substantial connection test in favor of a "totality of the circumstances" review derived from the following passage in *Chandris:*

[T]he total circumstances of an individual's employment must be weighed to determine whether he had a sufficient relation to the navigation of vessels and the perils attendant thereon.  The duration of a worker's connection to a vessel

---

**18.**  *See Schultz v. La. Dock Co.,* 94 F.Supp.2d 746, 750 (E.D.La.2000) ("Regardless of whether plaintiff spent one percent or 100 percent of his time" on vessels, "[n]one of plaintiff's work was of a seagoing nature" and "[h]e did not go to sea" and was therefore not a seaman); *Saienni v. Capital Marine Supply, Inc.,* 2005 WL 940558 at *8 (E.D.La. 2005) (assessing whether the nature of the plaintiff's repair work "included any 'seagoing activity' or whether he 'was hired to perform seagoing work during the employment in question' " and deciding that he was not a seaman even though he spent more than 30 percent of his time aboard vessels) (internal citations omitted); *Peterson v. Reinauer Transp. Co.,* 1997 WL 706220 at *4 (S.D.N.Y.1997) (employee not a seaman because he "never went to sea ... and his duties did not contemplate that he would ever go to sea").

**19.**  *See Lara v. Arctic King Ltd.,* 178 F.Supp.2d 1178, 1182 (W.D.Wash. 2001).

**20.**  *In re Endeavor Marine,* 234 F.3d 287, 292 (5th Cir.2000); *Naquin v. Elevating Boats, LLC,* 842 F.Supp.2d 1008, 1016 (E.D.La.2012) (*Harbor Tug* "does not mean, of course, that the employee's duties must *literally* take him to sea"); *Smith v. Kanawha River Terminals LLC,* 829 F.Supp.2d 401, 407 (S.D.W.Va.2011) ("[T]he Court ... rejects the notion that the Supreme Court meant to require that a plaintiff's job duties literally take him to sea."); *Navarre v. Kostmayer Const. Co.,* 52 So.3d 921, 928 (La.App.2010); *Gault v. Modern Cont'l/Roadway Const. Co. Joint Venture,* 100 Cal.App.4th 991, 1002–03, 123 Cal.Rptr.2d 85 (2002) (concluding that the *Harbor Tug* ruling did not prevent an employee who worked in a storm drainage channel from being a seaman).

and the nature of the worker's activities, taken together, determine whether a maritime employee is a seaman because the ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time.

*Chandris,* 515 U.S. at 370, 115 S.Ct. 2172 (internal citation omitted). These cases rely less on numerical computations and more on a weighing of the employee's duties to determine whether they are primarily sea-based or land-based.[21]

*Sea–Based Duties*

Because the Supreme Court in *Chandris* stressed that land-based maritime workers are not seamen, courts in the Second and Ninth Circuits, in ruling on summary judgment motions concerning seaman status, have focused on whether the employee's duties are "sea-based activities." [22]   For example, in *Vasquez v. McAllister Towing & Transp. Co.,* 2013 WL 2181186 at *1 (S.D.N.Y.2013), the court considered whether a

---

**21.** For example, in *Richard v. Mike Hooks, Inc.,* 799 So.2d 462, 466–67 & n. 2 (La.2001), the Supreme Court of Louisiana held that a welder who spent more than 30 percent of his time "on defendant's vessels" was not a seaman. Rather than specifically analyzing how much time the employee spent at sea, the court simply tallied up his duties and concluded that, overall, they indicated he was "a land-based employee who happens to spend some of his time working aboard defendant's vessels." *See also Tinin v. Laredo Const., Inc.,* 978 F.Supp. 700, 702 (S.D.Tex.1997) (where employee did not perform "a substantial part of his work on any vessel or fleet of vessels with any degree of regularity and continuity," the totality of the circumstances indicated that he was not a seaman).

**22.** *See O'Hara v. Weeks Marine, Inc.,* 294 F.3d 55, 64 (2d Cir.2002) ("[Plaintiff] thus produced no evidence from which a reasonable jury could conclude that he 'derives his livelihood from sea-based activities.' ") (internal citations omitted); *Cabral v. Healy Tibbits Builders, Inc.,* 128 F.3d 1289, 1293 (9th Cir.1997) (when analyzing the nature of the employee's connection to the vessel, the court should focus on whether his duties "were primarily sea-based activities"); *accord Scheuring v. Traylor Bros., Inc.,* 476 F.3d 781, 786 (9th Cir.2007); *Milligan v. Crux Subsurface, Inc.,* 2012 WL 4478664 at *5 (D.Alaska 2012); *Spears v. Kajima Eng'g & Constr., Inc.,* 101 Cal.App.4th 466, 479, 124 Cal.Rptr.2d 97 (2002).

boatyard worker—with repair and maintenance duties very similar to those of Mr. Dize—was a Jones Act seaman. Although the court acknowledged that there was authority for the proposition that the substantial connection test does not require that an employee's duties literally take the employee to sea, the court found that the plaintiff nonetheless failed "to demonstrate that his employment 'regularly expose[d]' him to seagoing perils" and granted summary judgment in favor of the defendant. *Vasquez,* 2013 WL 2181186 at *5 (citing *Chandris,* 515 U.S. at 368, 115 S.Ct. 2172).

From this perspective, "sea-based" duties that count for the purposes of the duration analysis are those that regularly expose the worker to seagoing perils. This is not to say that only time aboard a ship in transit over the water counts. There may be a variety of other circumstances that involve sea-based duties that expose a worker to the "perils of the sea." *E.g., Navarre v. Kostmayer Construction Co.,* 52 So.3d 921, 930 (La.App.2010) (employee who worked on off-shore barge entitled to trial on Jones Act claim); *In re Endeavor Marine,* 234 F.3d 287, 292 (5th Cir.2000) (worker who spent 18 months on derrick barge regularly "exposed to the perils of the sea" entitled to trial on Jones Act claim); *Delange v. Dutra Construction Co.,* 183 F.3d 916, 920–21 (9th Cir.1999) (carpenter who spent more than 80 percent of his time on board barge performing variety of seaman's duties in addition to carpentry raised triable issue as to his status under Jones Act); *Roberts v. Cardinal Services, Inc.,* 266 F.3d 368, 376 (5th Cir.2001) (although affirming summary judgment in favor of employer, court counted plaintiff's duties on liftboats toward 30 percent threshold). We need not catalog all of the possibilities for purposes of this case. But we can say that this approach, though not as bright a line as that drawn by the Circuit Court, serves the purpose of the statute with the degree of flexibility that the Supreme Court's decisions permit. We shall apply it in this case.

*Application to Mr. Dize*

As the trial court did, we shall assume, without deciding, that Mr. Dize's piloting of the launch boats, which consti-

tuted less than 20 percent of his work time, was a "sea-based" activity that sufficiently exposed him to the perils of the sea. The question therefore becomes whether his dockside or on-shore maintenance of the boats—which he estimated as taking up to 50 percent of his time—was "sea-based" work.

The case law on seaman status reveals a widely shared conclusion that "[p]erforming repairs and conducting inspections on vessels that are dockside hardly exposes the plaintiff to 'the perils of the sea.'" *Casser,* 2010 WL 5065424 at *3. *Harbor Tug* itself held that the employee's maintenance work and painting aboard a docked tugboat were not "substantial for seaman-status purposes." *Harbor Tug,* 520 U.S. at 559, 117 S.Ct. 1535. Subsequent cases have expounded upon this reasoning. For example, in *Vasquez,* the court noted:

> While working on vessels tied to the dock, plaintiff was not subjected to storms, high seas, or other caprices of open water. . . . [O]nshore assistance was never far away. Accordingly, a reasonable jury simply could not conclude that plaintiff's employment exposed him to the "special hazards and disadvantages" of seamanship.

2013 WL 2181186 at *5.

In *Lara v. Arctic King, Ltd.,* 178 F.Supp.2d 1178 (W.D.Wash.2001)—another case involving a shipyard employee whose duties were similar to Mr. Dize's—the court also held that maintenance work on moored vessels did not subject the individual to the "special hazards and disadvantages" of sea duty:

> The fact the vessel remained tied to a pier obviously eliminated many of the peculiar risks that seamen face, such as the need to fight fires without outside assistance, the need to abandon ship, and the need to survive exposure to the elements until help arrives. . . . Another seaman hazard or disadvantage that plaintiff did not face was potential delay or inconvenience in being transported to medical attention for injuries. . . . [Plaintiff could] depart his work place at any time. He therefore did not have any of the inconveniences, limitations and pressures encountered by seamen

who are often stuck with their vessel and the control of its Master and operator for extended periods until the next port call.

*Id.* at 1182.[23]

Mr. Dize's time spent maintaining the Association's vessels while they were docked or onshore at the Solomons Island Transfer Station (as well as his time spent performing upkeep of the station property) does not count toward the 30 percent threshold for the same reasons. As in the cases cited above, these duties—performing overhauls and refits of vessels; painting; sanding; changing propellers, rotors, shafts, and rub rails; replacing zinc anodes; cleaning the boat interiors; and fueling—did not subject him to the "caprices of open water," and, in the case of an emergency, "onshore assistance was never far away." During his commission of this work, there would never be a "need to abandon ship" or "survive exposure to the elements until help arrives." His proximity to shore meant that there was no danger of unusual "delay or inconvenience in being transported to medical attention for injuries." This work plainly did not subject Mr. Dize to the perils of the sea, and therefore did not comprise sea-based activities that should have been counted in the Circuit Court's duration analysis.

## Conclusion

As the Supreme Court has observed, the Jones Act provides a special remedy to maritime employees who face the "perils of the sea." Accordingly, in order to satisfy the substantial connection test articulated in *Chandris*, an employee must

---

**23.** Other positions that have been held to be free of the perils of the sea include a repairman on a barge moored at a repair facility, *see Schultz v. La. Dock Co.*, 94 F.Supp.2d 746, 750 (E.D.La.2000) (employee's duties "were limited to inspecting and repairing barges moored at the facility" and he therefore did not "face the perils of the sea in the manner associated with seaman status"), and an air-conditioning repairman on vessels moored at a shipyard, *Peterson v. Reinauer Transp. Co.*, 1997 WL 706220 at *4 (S.D.N.Y.1997) (employee was a "land-based worker whose duties did not ... regularly expose him to the perils of the sea").

perform sea-based duties that give rise to those unique dangers. Because Mr. Dize did not spend at least 30 percent of his work time performing such duties, he did not have a connection to a vessel that was substantial in both duration and nature. He therefore was not a seaman for the purposes of the Jones Act.[24]

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.

---

24. What, if any, benefits Mr. Dize or his survivors would be entitled to under the LHWCA is not before us.